**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CLYDE KEATON, <br><br>              Plaintiff, <br><br>     v. <br><br> ARGO TURBOSERVE CORPORATION, *et al.*, <br><br>              Defendants. | Civil Action No.: 2:17-cv-03978 (CCC-JBC) <br><br><br> **OPINION** |

**CECCHI, District Judge.**

This matter comes before the Court by way of the motion to dismiss (ECF No. 108 ("Mot.")) Plaintiff Clyde Keaton's ("Plaintiff") Third Amended Complaint (ECF No. 107 ("TAC")) pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by Defendant Argo Turboserve Corporation ("ATC") and Defendants John Calicchio, Lisa Jackson, Tate Jackson, and Quinn Jackson (the "Individual Defendants," together with ATC, "Defendants"). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). After reviewing the submissions made in support of and in opposition to the instant motion (ECF Nos. 110 ("Opp."), 111 ("Reply")) and for the reasons set forth below, Defendants' motion is granted in part and denied in part.

## I.    BACKGROUND

The instant action arises out of Plaintiff's termination by ATC under the "for cause" provision of his employment contract. Plaintiff asserts, however, that he was actually terminated "without cause." His core complaint is that, by improperly branding his termination as "for cause," ATC denied him various bonus payments. Plaintiff also asserts that his termination was in retaliation for his objections to occupational safety hazards, and that ATC failed to pay back a loan and some deferred compensation.

a)      **Factual Background**

Plaintiff founded ATC, a global supply chain services management company, in 1996 and served as its President and Chief Executive Officer until February 2017. TAC ¶ 12.  Throughout his tenure, Plaintiff received a series of employment contracts from ATC. Id. ¶ 16.  The most recent contract between the parties (the "Employment Contract") was agreed to in February of 2014, and it provided, *inter alia*, that either party may terminate the contract before it expired on December 31, 2018. Id. ¶¶ 17–18.  ATC could terminate the contract "for cause" or "without cause"; Plaintiff was entitled to additional compensation if terminated "without cause." Id. ¶¶ 19–20.

By letter dated February 1, 2017, ATC notified Plaintiff of its decision to terminate him "for cause." Id. ¶ 21.  Accordingly, ATC did not provide Plaintiff various retirement bonuses or termination bonuses due under the "without cause" provisions of the Employment Contract. Id. ¶ 51.  Plaintiff claims that ATC's explanations for terminating him did "not fit the contractual definition of 'for cause,' or are pure pretexts for removing [Plaintiff] without paying him the compensation he is due under the 'without cause' provisions of the contract." Id. ¶ 25.  Plaintiff also claims that his termination was in retaliation for his objections to hazardous conditions at one of ATC's subsidiary's facilities. Id. ¶¶ 90–91.  Plaintiff points to his termination letter, which states that his termination was based in part on his approval of a new lease for one of ATC's subsidiaries in Houston, Texas, executed on May 29, 2015. Id. ¶¶ 33, 35.  Plaintiff alleges that ATC's subsidiary required the new lease because its previous space (the "Houston Facility") was inadequately small, thus endangering company employees and placing ATC in jeopardy of receiving health and safety violations. Id. ¶¶ 36, 88.  Plaintiff claims that he raised his concerns to the Board of Directors and refused to permit the hazardous conditions to continue by leasing a larger space, with the Board's approval. Id. ¶¶ 33, 38, 78.

2

In addition to denying him benefits due under a "without cause" termination, ATC allegedly did not pay Plaintiff back for a loan he made to an affiliated entity and for bonuses that he deferred to assist with ATC's cash flow.  Specifically, in 2014, he deferred the entirety of his previous year's bonus (totaling $1,150,000) and, in 2015, Plaintiff deferred a portion of his previous year's bonus (totaling $400,00). Id. ¶¶ 43–45.  He has not received these deferred bonuses from ATC. Id. ¶ 73.  Additionally, on or about November 2016, ATC's Chief Financial Officer (the "CFO") asked Plaintiff to wire $1,500,000 to Maxus Capital Group, LLC ("Maxus"), a creditor of ATC, and represented to Plaintiff that any funds paid by him to Maxus would be repaid to Plaintiff by the end of 2016. Id. ¶ 41.  On November 4, 2016, Plaintiff wired $1,500,000 to Maxus (the "Maxus Payment"). Id. ¶ 42.  ATC has repaid Plaintiff $700,000 of the Maxus Payment, and there remains a balance outstanding of $800,000. Id. ¶ 43.

### b)      Procedural Background

Plaintiff initiated this action on June 2, 2017, against ATC, the Individual Defendants, and other unnamed individuals. ECF No. 1.  Since then, the Court has granted Plaintiff multiple opportunities to amend his complaint, to add relevant factual allegations, clarify claims, and assert new claims. *See* ECF Nos. 19 (granting Plaintiff leave to file the First Amended Complaint), 43 (granting Plaintiff leave to file the Second Amended Complaint), 57 (granting Plaintiff leave to file the corrected Second Amended Complaint), 106 (granting Plaintiff leave to file the Third Amended Complaint).  The Court has not yet adjudicated the merits of Plaintiff's claims.

On October 29, 2020, Plaintiff filed the operative Third Amended Complaint. ECF No. 107.  He asserts ten causes of action:  (1) breach of the Employment Contract as to ATC; (2) breach of contract as to ATC for failure to repay funds advanced by Plaintiff to Maxus; (3) breach of contract as to ATC by equitable subrogation to the rights of Maxus; (4) unjust enrichment as to all Defendants; (5) tortious interference with contractual relations as to the Individual Defendants;

(6) retaliation under the Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1, *et seq.* as to all Defendants; (7) common law wrongful discharge as to all Defendants; (8) breach of the implied covenant of good faith as to ATC; (9) declaratory judgment as to ATC; and (10) civil conspiracy as to the Individual Defendants. Id.  On November 12, 2020, Defendants filed the instant motion to dismiss under Rule 12(b)(6). ECF No. 108.  Therein, Defendants also request an award of attorneys' fees and costs. Id. at 30.  Plaintiff filed an opposition on December 7, 2020 (Opp.), to which Defendants replied on December 14, 2020 (Reply).

## II.   <u>LEGAL STANDARD</u>

For a complaint to survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In evaluating the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  "A pleading that offers 'labels and conclusions . . . will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, when reviewing complaints for failure to state a claim, district courts should engage in a two-part analysis:  "First, the factual and legal elements of a claim should be separated . . . . Second, a District Court must then determine whether the facts alleged in the complaint are

sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (citations omitted).[1]

## III.   DISCUSSION

The Court finds, as explained below, that the Third Amended Complaint sufficiently states: breach of contract claims under Counts One and Two, an unjust enrichment claim under Count Four, a tortious interference claim under Count Five, a claim for a violation of CEPA under Count Six, and a civil conspiracy claim under Count Ten. Id.  Plaintiff's equitable subrogation claim under Count Three is dismissed because Plaintiff fails to allege a right to subrogation.  Counts Seven through Nine are also dismissed, as they include duplicative claims.

### a)   Count One:  Breach of the Employment Contract as to ATC

Under Count One, Plaintiff asserts a breach of contract claim against ATC, alleging that it failed to provide him a series of payments under the Employment Contract by improperly branding his separation from the company as a "for cause" termination. TAC ¶¶ 46–53.  To establish a claim for breach of contract, a plaintiff must show:  (1) the existence of a valid contract; (2) a breach of that contract;  (3) resulting damages;  and  (4) that the plaintiff performed its own contractual obligations. *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007).[2]  ATC contests only the

---

[1] When assessing a motion to dismiss under Rule 12(b)(6), this Court is limited to considering the allegations in the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents on which a plaintiff's claims are based. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

[2] As a preliminary matter, Plaintiff argues that Federal Rule of Civil Procedure 12(g)(2) bars ATC from raising a defense to Counts One, Two, Three, and Eight because ATC did not move to dismiss those claims in Plaintiff's initial complaint despite having the opportunity to do so. *See* Opp. at 19, 22, 24–25.  Rule 12(g)(2) generally prohibits a party from "raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. Pr. 12(g)(2); *see Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 320 (3d Cir. 2015).  However, where, as here, "an amended complaint contains new factual allegations in support of a claim, Rule 12(g)(2) does not apply and the defendant may raise new defenses and objections to that claim." *Bhatti v. Republican Caucus of Pennsylvania House of Representatives*, No. 18-2178, 2020 WL 3412661, at *3 (M.D. Pa. June 22, 2020) (citation omitted); *see Kroger Co. v. New Enter. Stone & Lime Co.*, 2018 WL 4615955,

second and fourth elements. Mot. at 22–24.  The Court finds that all four elements are sufficiently

pleaded here.

First, Plaintiff pleads the existence of a valid contract:  the Employment Contract. TAC ¶

16.  Next, in support of the second element, Plaintiff alleges that ATC improperly terminated him

"for cause" and failed to pay him bonuses due under provisions of the Employment Contract that

provide for additional compensation if he is terminated "without cause." Id. ¶ 20.  He also includes

specific references to his termination letter and explains why the reasons stated therein did not

constitute "cause" for termination. TAC ¶¶ 26–34.  By identifying the contractual provisions

allegedly breached by ATC's conduct and explaining why those provisions were breached,

Plaintiff has met the second element. *See Potter v. Newkirk*, No. 17-08478, 2020 WL 6144756, at

*13 (D.N.J. Oct. 20, 2020) ("Under New Jersey law, a complaint alleging breach of contract must,

at a minimum, identify the contracts and provisions breached.") (internal citation and quotations

omitted); *Video Pipeline, Inc. v. Buena Vista Home Ent., Inc.*, 210 F. Supp. 2d 552, 561–62 (D.N.J.

2002) (defendant-counterclaimant met second element because it alleged specific contractual

provisions breached by the plaintiff's conduct).

---

at *2 (E.D. Pa. Sept. 25, 2018) ("[W]hen a plaintiff's amended complaint contains new factual
averments, Rule 12(g)(2) does not apply and defendants are entitled to challenge with another Rule
12(b)(6) motion.").  Because Plaintiff has added new factual allegations in support of his breach
of contract, tortious interference, and breach of implied covenant of good faith claims since the
filing of the initial complaint, Rule 12(g)(2) is inapplicable and the Court may consider ATC's
objections. *See Bhatti*, 2020 WL 3412661, at *3; *Kroger Co.*, 2018 WL 4615955, at *2.  Moreover,
as to Count Three, Plaintiff did not assert the equitable subrogation claim at issue until his Second
Amended Complaint. ECF No. 45.  And once the defense was available, Defendants asserted (in
their Motion to Dismiss the Second Amended Complaint) that Count Three should be dismissed
because Plaintiff has failed to state a breach of contract claim by Maxus against ATC. ECF No.
46-2 at 30.

Third, Plaintiff alleges that, as a result of ATC's breach, he suffered monetary damages, including the loss of bonus payments to which he was entitled under a "without cause" termination. TAC ¶¶ 50–53.

With regard to the fourth element, Plaintiff alleges that he "performed all of his obligations under the Employment Contract." Id. ¶ 47.  Although ATC argues that Plaintiff's allegation is conclusory and unsupported by sufficient factual allegations (Mot. at 23), Plaintiff has alleged facts that, at a minimum, suggest his own performance under the contract. *See Bittner v. Waterford Twp. Sch. Dist.*, No. 18-12084, 2021 WL 1382156, at *3 (D.N.J. Apr. 13, 2021) (finding that the plaintiff met the fourth element because it "alleged facts that suggest that it performed its obligations under the [applicable a]greement").  Namely, Plaintiff has alleged that "as ATC's president, [he] successfully grew the company over two decades into an operation with four distinct divisions that generated total annual revenues of over $300 million." TAC ¶ 15.  He also fervently denies ATC's assertions that he:  (1) failed to devote his time, skills, energy and ability as required under Article One of the Employment Contract; (2) engaged in acts of insubordination; (3) failed to obtain board approval for a venture in Italy; (4) improperly disclosed the sale of one of ATC's divisions; or engaged in any conduct that may constitute cause for his termination. Id. ¶¶ 29–32.  By contrast, in *Rotante v. Franklin Lakes Board of Education*, the plaintiff failed to meet the fourth element because he "fail[ed] to provide <u>any</u> facts which point to the Plaintiff performing his own contractual duties," and instead argued that he had no duty to perform after the defendant had allegedly breached the agreement. No. 13–3380, 2014 WL 6609034, at *7 (D.N.J. Nov. 20, 2014).  Therefore, in consideration of the Court's obligation to resolve all reasonable inferences in favor of Plaintiff, the fourth element is satisfied.

Accordingly, Plaintiff has stated a claim for breach of the Employment Contract, and the motion to dismiss Count One is denied.

**b)    Count Two:  Breach of Contract as to ATC for Failure to Repay Maxus Loan**

Under Count Two, Plaintiff alleges another breach of contract claim against ATC, asserting that it failed to pay back funds that he advanced to Maxus on ATC's behalf. TAC ¶¶ 54–59.  Plaintiff alleges that he "and ATC have an agreement that requires ATC to pay back the funds which [Plaintiff] advanced to Maxus on ATC's behalf" (TAC ¶ 55), an agreement separate from the Employment Contract (*see* Opp. at 26).

ATC argues that Plaintiff has failed to plead the first element of a contract claim, the existence of a contract, because Plaintiff voluntarily made the Maxus Payment and did not obtain board approval before doing so. Mot. at 19–20.  Under New Jersey law, "[a] contract arises from offer and acceptance, and must be sufficiently definite 'that the performance to be rendered by each party can be ascertained with reasonable certainty.' Thus, if parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract." *Mendonca & Partners, LLC v. Prakash Baskaran, Pawaa, Inc.*, No. 16-639, 2016 WL 3769749, at *1–2 (D.N.J. July 13, 2016) (quoting *West Caldwell v. Caldwell*, 26 N.J. 9, 24–25 (1958)).

Here, ATC's CFO allegedly requested that Plaintiff wire $1,500,000 to Maxus, to avoid a default by ATC and a resulting freeze of its bank accounts, and represented to Plaintiff that the funds would be paid back to him by the end of 2016 if he completed the wire. TAC ¶¶ 40–41. Plaintiff alleges that he accepted the offer, "in furtherance of and in order to protect his interest as an officer and employee of ATC," by wiring $1,500,000 to Maxus on November 4, 2016. Id. ¶¶ 42, 62.  By specifying the price ($1,500,000) and duration of the contract ("by the end of 2016"), Plaintiff has identified its essential terms. *See Baer v. Chase*, 392 F.3d 609, 619 (3d Cir. 2004) (classifying price term and duration as essential terms of contracts).  Plaintiff's allegations indicate that the parties agreed on these essential terms, manifested an intention to be bound by those terms and thus, created an enforceable contract. *See Weichert Co. Realtors v. Ryan*, 128 N.J. 427 (N.J.

1992).  While the parties disagree over whether board approval was necessary for the loan at issue and whether there was a sufficient bargained-for exchange, at this stage, all reasonable inferences and uncertainties in contractual language must be construed in Plaintiff's favor. *See Phillips*, 515 F.3d at 234.

Therefore, Plaintiff has stated a claim for breach of a loan agreement related to the Maxus Payment, and Count Two may proceed.[3]

### c)   Count Three:  Breach of Contract as to ATC by Equitable Subrogation

Under Count Three, Plaintiff asserts a breach of contract claim against ATC by equitable subrogation to the rights of Maxus. TAC ¶¶ 60–69.   Plaintiff asserts that equitable subrogation is warranted here because he made a payment to Maxus at ATC's request, to avoid a default by ATC under a Maxus financing agreement. Id. ¶ 40; *see* id. ¶¶ 62, 66.  As explained by the Third Circuit Court of Appeals:

> Subrogation itself is not unusual; in general terms, it "simply means substitution of one person for another; that is, one person is allowed to stand in the shoes of another and assert that person's rights against a third party." *US Airways v. McCutchen*, 569 U.S. 88, 97 n.5, (2013). Most often, it arises in the insurance context as a procedural mechanism to allow an insurer (the subrogee) to step into the shoes of its insured (the subrogor) after it has compensated the insured for harm caused by a third party. The subrogee, having stepped into the shoes of the subrogor, is entitled to assert all of the subrogor's rights and claims against the responsible third party.

*In re Frescati Shipping Co., Ltd.*, 886 F.3d 291, 309 (3d Cir. 2018), *aff'd sub nom. CITGO Asphalt Ref. Co. v. Frescati Shipping Co., Ltd.*, 140 S. Ct. 1081 (2020).

Here, Plaintiff (the subrogee) is attempting to step into the shoes of Maxus (the subrogor) to assert a breach of contract claim against ATC.  However, Plaintiff fails to sufficiently allege a breach of contract claim that could be asserted by Maxus against ATC.   Although Plaintiff

---

[3] Because the Court finds that Plaintiff stated a claim under a standard breach of contract theory, it need not address Plaintiff's alternative argument that he stated a claim under an implied-in-law contract theory. *See* Opp. at 23.

references a "financing agreement" between Maxus and ATC, he does not identify any contractual provisions breached by ATC's conduct. *See Potter*, 2020 WL 6144756 at *13 (dismissing breach of contract claim because Plaintiff failed to identify the provisions of the contract that Defendant breached, and only asserted conclusory allegations that Defendant breached by performing certain actions). Nor does he allege that Maxus performed its obligations under the agreement between it and ATC. *See Frederico*, 507 F.3d at 204. Accordingly, Plaintiff has failed to allege a right to subrogation and Count Three is dismissed. *See Holloway v. State*, 125 N.J. 386, 398 (1991) ("The fundamental principle of subrogation is that the subrogee's rights rise no higher than those of the subrogor."); *Feigenbaum v. Guaracini*, 402 N.J. Super. 7, 22 (N.J. Super. 2008) (the "right of subrogation . . . depends on the merits of the [subrogor's] claim . . . and that claim is subject to all defenses which [the third party] had against claims of the [subrogor]") (citing *Holloway*, 125 N.J. at 396).

### d)  Count Four:  Unjust Enrichment as to All Defendants

Under Count Four, Plaintiff asserts an unjust enrichment claim against all Defendants, alleging that the retention of his deferred compensation and the failure to repay the Maxus Loan conferred an unjust benefit on ATC and its shareholders. TAC ¶¶ 70–76. Defendants argue that Plaintiff has failed to establish the *prima facie* elements of an unjust enrichment claim, that the claim is barred by virtue of the Employment Contract, and that the Individual Defendants are not liable for ATC's failure to repay Plaintiff. Mot. at 24–26. The Court addresses each argument in turn below.

First, the Court finds that Plaintiff has sufficiently stated a claim for unjust enrichment based on ATC's failure to repay him the entirety of the Maxus Payment and his deferred bonuses from 2013 and 2014. Under New Jersey law, "[t]o state a claim for unjust enrichment, a plaintiff must show that '(1) at plaintiffs expense (2) defendant received [a] benefit

(3) under circumstances that would make it unjust for defendant to retain [the] benefit without paying for it.'" *Read v. Profeta*, 397 F. Supp. 3d 597, 643 (D.N.J. 2019) (quoting *Arlandson v. Hartz Mt. Corp.*, 792 F. Supp. 2d 691, 711 (D.N.J. 2011)).

The first element is met here – it is uncontested that the Maxus Payment and deferred bonuses were made at Plaintiff's expense. *See* Mot. at 25–26. Further, Plaintiff satisfies the second element by alleging that the "the deferral and Maxus Payment benefitted ATC and its shareholders" (TAC ¶ 73) and specifically explaining that the Maxus Payment allowed ATC to avoid default and "a resulting freeze of ATC's bank accounts feared by ATC's Chief Financial Officer" (id. ¶ 40; *see also* id. ¶¶ 44–45 (the deferred bonuses assisted with ATC's cash flow)). The third element is also met. Plaintiff alleges that ATC's CFO requested the Maxus Payment and promised him that the entirety of the loan would be repaid. Plaintiff sufficiently alleges that it would be unjust for ATC to repay only $700,000 of the Maxus Payment, in contravention to the promises of its CFO. Likewise, Plaintiff adequately alleges that it would be unjust for ATC to retain bonuses, which he was entitled to and were deferred to assist with the corporation's cash flow. Therefore, Plaintiff has stated a claim for unjust enrichment. *See Mendonca & Partners, LLC v. Prakash Baskaran, Pawaa, Inc.*, No. 16-639, 2016 WL 3769749, at *3 (D.N.J. July 13, 2016) (allowing unjust enrichment claim to proceed because the complaint "alleges that the defendants represented that they would pay plaintiffs and give them equity interests for services and other benefits conferred," but they did not do so).[4]

---

[4] Plaintiff may assert both a breach of contract and an alternative unjust enrichment claim against ATC because ATC contests the validity of the supposed loan agreement between itself and Plaintiff. *See Grudkowski*, 556 F. App'x at 170, n.8 ("[P]leading both breach of contract and unjust enrichment is plausible only when the validity of the contract itself is actually disputed, making unjust enrichment a potentially available remedy.").

Next, insofar as Defendants assert that the Employment Contract bars the unjust enrichment claim, the Court finds that it is unclear whether the Contract governs the benefits at issue.  The Third Circuit has held that "[r]ecovery under unjust enrichment may not be had when a valid, unrescinded contract governs the rights of the parties." *Van Orman v. Am. Ins. Co.*, 680 F.2d 301, 310 (3d Cir. 1982).  Here, Plaintiff claims that he conferred three benefits on Defendants: (1) he made a payment to Maxus, which was promised by ATC to be repaid to him, and there remains a balance of $800,000; (2) he "deferred a $1,150,000 bonus for 2013," which was never repaid; and (3) he "deferred a portion of his bonus earned in the year 2014" for $400,000 that was never repaid. TAC ¶¶ 41–45.

The Employment Contract states under article 4(B)(e) that Plaintiff's "annual bonus shall be paid by Argo Turboserve no later than December 31 of the calendar year following the calendar year for which the annual bonus is payable." ECF No. 108-2 at 27.  Article 2(D) states that "Keaton will be reimbursed for reasonable business expenses, consistent with [ATC] policies regarding the reimbursement of expenses . . . upon submission of appropriate documentation." Id. at 26.  However, it is unclear whether the Employment Contract covered the deferment of bonuses and whether such deferments qualify as a "reasonable business expense."  It is also unclear whether the Employment Contract covered the Maxus Payment.  Defendants point to article 2(B)(e) of the Employment Contract, which states that, "[e]xcept for the assumption of trade debt in the ordinary course (i.e., accounts payable), the approval of the Board will be required for the assumption of any debt that is not on Argo Turboserve's balance sheet as of December 31, 2013." ECF No. 108-2 at 25.  Plaintiff argues that the term "assumption of debt" addresses only the assumption of <u>new</u> debt, meaning that the Maxus Payment was excluded from the Employment Contract because it only changed creditors. *See* Opp. at 22; TAC ¶ 40 (describing Maxus as a past creditor).  Even though ATC interprets article 2(B)(e) as covering <u>all</u> assumptions of debt (Mot. at 20),

uncertainties in contractual language must be resolved in Plaintiff's favor at this stage.  Plaintiff

has put forth sufficient facts to allow the Court to reasonably infer that the Employment Contract

does not govern the Maxus Payment or deferred bonuses.  As such, the Employment Contract does

not bar Plaintiff's restitution claim. *See Horgan Bros., Inc. v. Monroe Prop., LLC*, No. 07–3028,

2011 WL 794389, at \*5 (D.N.J. Feb. 28, 2011) (an unjust enrichment claim may arise from a

relationship governed by a valid contract if certain benefits conferred upon the defendant extended

beyond the scope of the contract).

Lastly, the Court finds that the Individual Defendants may be held liable for unjust

enrichment.  To succeed on an unjust enrichment claim, Plaintiff must allege that he expected

compensation from the Individual Defendants at the time of performance. *See VRG Corp. v. GKN

Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994).  The Individual Defendants argue for dismissal of

the unjust enrichment claim because Plaintiff expected compensation from ATC, not them, at the

time of performance. Mot. at 26, n.5.  However, Plaintiff sufficiently alleges that any compensation

expected from ATC (a closely held company) was also expected from the Individual Defendants

(the board members and shareholders of ATC).  Furthermore, Plaintiff adequately alleges a course

of dealings with, and connection to, the Individual Defendants. *See Stewart v. Beam Glob. Spirits

& Wine, Inc.*, 877 F. Supp. 2d 192, 197 (D.N.J. 2012) ("[T]he recognition that 'some direct

relationship' should exist between the parties to an unjust enrichment claim simply reflects the

need to curtail the reach of this equitable remedy—a so called 'legal fiction'—to prevent a finding

of liability in cases where the defendant had absolutely no course of dealings with, and no other

demonstrated connection to, the plaintiff.") (quoting *Callano v. Oakwood Park Homes Corp.*, 91

N.J. Super. 105, 219 A.2d 332, 335 (N.J. 1966)).[5]

---

[5] The Individual Defendants argue that, because Plaintiff seeks to hold them liable in their role as
shareholders, his claim against them is barred absent allegations of fraud or wrongdoing on their

Accordingly, the motion to dismiss Count Four is denied.

e)   **Count Five:  Tortious Interference with Contractual Relations as to the Individual Defendants**

Under Count Five, Plaintiff asserts a tortious interference with contractual relations claim against the Individual Defendants. TAC ¶ 80.   "Under New Jersey law, there are five elements of a claim for tortious interference with a contractual relationship: (1) plaintiff['s] existing or reasonable expectation of economic benefit or advantage; (2) a defendant's knowledge of the plaintiff's expectancy; (3) wrongful and intentional interference with that expectancy by the defendant; (4) a reasonable probability that the plaintiff would have received the anticipated economic advantage absent such interference; and (5) damages resulting from the defendant's interference." *SalandStacy Corp. v. Freeney*, No. 11-3439, 2012 WL 959473, at *13 (D.N.J. Mar. 21, 2012) (citing *DeJoy v. Comcast Cable Communs.*, 941 F. Supp. 468, 476–77 (D.N.J. 1996)).

The Individual Defendants do not appear to dispute that all five elements are pleaded here. *See* Mot. at 15–16.  They argue instead that Count Five must be dismissed because they were acting as agents of ATC when recommending Plaintiff's termination. Mot. at 15–16.  However, a claim for tortious interference may go forward if the defendant-agent was acting "outside the scope of his employment and/or for his own personal gain." *Marrero v. Camden Cty. Bd. of Soc. Servs.*, 164 F. Supp. 2d 455, 478 (D.N.J. 2001) (quoting *Horvath v. Rimtec Corporation*, 102 F. Supp. 2d

---

part. Reply at 10; *see Wolinetz v. Weinstein*, No. 08-5046, 2019 WL 1615134, at *5 (D.N.J. Apr. 16, 2019) (allowing unjust enrichment claim to proceed against defendant entity but dismissing claim against individual defendant at summary judgment "because the evidence does not suggest fraud or other wrongdoing on his part.").   Here, the Court finds sufficient allegations of wrongdoing by the Individual Defendants to overcome dismissal at this stage. *See infra* Section III(e); *Equiom (Isle of Man) Ltd. v. Jacobs*, No. 16-4362, 2017 WL 6550481, at *5 (D.N.J. Dec. 22, 2017) (allowing unjust enrichment claim to proceed, despite the lack of a direct relationship between plaintiff and defendants, because Plaintiff's allegations indicated that the defendants were not in "the class of innocent, attenuated third parties the direct relationship requirement is intended to protect").

219, 236 (D.N.J. 2000)).[6]   Here, Plaintiff explicitly alleges that the Individual Defendants "benefitted personally and directly from directing [Plaintiff's] termination without cause," (TAC ¶ 82) and "acted outside the scope of their employment, for personal gain and out of malice toward [Plaintiff]" (id. ¶ 84).   Moreover, Plaintiff explains that the Individual Defendants stood to personally benefit from their recommendation because the termination benefits due to Plaintiff under a 'without cause' termination "flow instead to the Individual Defendants as shareholders" under a 'for cause' termination. Id. ¶ 81.   These allegations are sufficient to overcome dismissal at this point in the proceeding. *See DeJoy v. Comcast Cable Commc'ns Inc.*, 941 F. Supp. 468, 477 (D.N.J. 1996) (plaintiff's tortious interference claims against co-workers allowed to proceed because plaintiff alleged that defendant-co-workers acted for personal gain and advancement).

Accordingly, Plaintiff states a claim for tortious interference under Count Five against ATC and the Individual Defendants.

### f)      Count Six:  Violation of the Conscientious Employee Protection Act as to all Defendants

Under Count Six of the Third Amended Complaint, Plaintiff alleges that all Defendants violated CEPA by terminating Plaintiff in retaliation for his objections to, and failure to accept, the hazardous conditions at the Houston Facility. TAC ¶¶ 87–92.   CEPA states, in relevant part:

> An employer shall not take any retaliatory action against an employee because the employee does any of the following:
>
> a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer or another employer, with whom there is a business relationship, that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law

---

[6] *See also Emerson Radio*, 253 F.3d at 173 ("Acts committed by an agent outside the scope of employment or agency may satisfy the 'tripartite relationship' required for a tortious interference claim."); *Varrallo v. Hammond Incorporated*, 94 F.3d 842, 849 n.11 (3d Cir. 1996) ("An employee who acts for personal motives, out of malice, beyond his authority, or otherwise not 'in good faith in the corporate interest' falls outside the scope of the privilege.").

. . . [or]

c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:
(1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . . or
(2) is fraudulent or criminal . . . or
(3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

N.J.S.A. 34:19–3.

To establish a CEPA claim, a plaintiff must satisfy a four-prong test:  "(1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a 'whistle-blowing' activity [as described in N.J.S.A 34:19–3]; (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action." *Clayton v. City of Atl. City*, 722 F. Supp. 2d 581, 588–89 (D.N.J. 2010) (quoting *Dzwonar v. McDevitt,* 177 N.J. 451, 462 (2003)). Defendants contest the first, second and fourth prongs. Mot. at 6–11.  The Court finds that Plaintiff has sufficiently pleaded all four prongs.

Here, Plaintiff alleges that he objected to the conditions at ATC's subsidiary's former facility because it:  (1) did not comply with applicable law and safety regulations, "put[tting] the company in jeopardy of receiving citations for multiple health and safety violations" (TAC ¶ 36); and (2) endangered company employees, who were lifting and moving pump packages "using forklifts and straps [instead of cranes], which was extremely dangerous and which could result in death to workers involved" (id. ¶ 37).  Plaintiff's allegations satisfy the first prong because they suggest that a reasonable lay person would conclude, as Plaintiff did, that ATC's conduct was

16

violating a law, rule, regulation, and/or a clear mandate of public policy. *See Blackburn v. United Parcel Serv., Inc.*, 3 F. Supp. 2d 504, 515 (D.N.J. 1998), *aff'd* 179 F.3d 81 (3d Cir. 1999).[7]

Second, Plaintiff alleges that he performed whistle-blowing activity by "object[ing] to the hazardous conditions in the Houston [F]acility, disclos[ing] to Defendants those conditions, and refus[ing] to permit them to continue by entering into a new lease for a different facility." TAC ¶ 89. Courts have held that "[m]erely questioning or disagreeing with an employer's policies or practices does not constitute 'whistle-blowing' activity within CEPA's meaning." *Gimello v. Costco Wholesale Corp.*, No. A-1506-07T3, 2008 WL 5115884 at *4 (N.J. Super. Ct. App. Div. Dec. 8, 2008) (citing *Blackburn*, 3 F. Supp. 2d at 517). However, here, Plaintiff alleges facts suggesting that he went beyond merely questioning or disagreeing with ATC's conduct. He allegedly identified and explained the hazardous conditions at ATC's subsidiary to the Board of Directors (TAC ¶ 37–38), advised them that a larger space was necessary (id.), and refused to participate in the allegedly unsafe practices by leasing a larger space for the ATC subsidiary (id. ¶ 39). *See Eng. v. Misys Int'l Banking Sys., Inc.*, No. 05-2540, 2005 WL 1703199, at *3 (D.N.J. July 20, 2005) (finding that the plaintiff met the second element because he was "entitled to a favorable inference that by identifying and advising [his employer] of [their HR systems's] security problems, [the p]laintiff disclosed the problems and objected to its operation.").[8]

---

[7] Courts have dismissed CEPA claims where the plaintiff's whistleblowing theory was "implausible" (*see Malia v. Amazon.com, Inc.*, No. 17-5155, 2017 WL 6619227, at *3 (D.N.J. Dec. 28, 2017)) or involved "[v]ague and conclusory complaints, complaints about trivial or minor matters, or generalized workplace unhappiness" (*Battaglia v. United Parcel Serv.*, 214 N.J. 518, 559 (2013)). That is not the case here.

[8] Note that, this court previously rejected a CEPA claim for failure to meet the second prong where the plaintiff's complaint was "vague as to what the claim addresses, who authored it, and whether it remains pending." *Clayton v. City of Atl. City*, 722 F. Supp. 2d 581, 586–87 (D.N.J. 2010). By contrast, here, it is evident that Plaintiff made the complaint, and his objections clearly concerned the allegedly hazardous conditions at ATC's subsidiary. *See id.*

Plaintiff also alleges an adverse employment action (termination of employment) and a causal connection between his whistle-blowing activity and termination, in satisfaction of the third and fourth prongs. Even if, as Defendants argue, the temporal proximity between Plaintiff's whistleblowing and termination is not suggestive of retaliatory animus (Mot. at 10), Plaintiff has alleged other facts suggestive of retaliation that suffice to survive 12(b)(6) dismissal. *See Clayton*, 722 F. Supp. 2d at 589 (D.N.J. 2010) (dismissing plaintiff's CEPA claim because he did not allege "any facts that could lead to an inference of causation") (emphasis added). Namely, Plaintiff alleges that his termination letter lists Plaintiff's approval of the new Houston lease as a reason for his termination. TAC ¶ 35. Therefore, Plaintiff has stated a viable CEPA claim.

The Individual Defendants nevertheless argue that the CEPA claim against them must be dismissed because "[a] plaintiff is only able to maintain a common law wrongful discharge cause of action against his employer, and not against individual employees." Mot. at 14 (citing *Bobo v. Wildwood Pub. Sch. Bd. of Educ.*, No. 13–5007, 2014 WL 7339461, at *10 (D.N.J. Dec. 23, 2014). This contention is unavailing. CEPA explicitly applies liability to "employers," which it defines as "any individual, partnership, association, corporation <u>or any person or group of persons acting directly or indirectly on behalf of or in the interest of an employer with the employer's consent.</u> . ." N.J.S.A. 34:19–2(a) (emphasis added). Thus, CEPA "creates individual liability for agents of the employer, including supervisory employees." *Palladino ex rel. U.S. v. VNA of S. New Jersey, Inc.*, 68 F. Supp. 2d 455, 473 (D.N.J. 1999). Following from that proposition, this Court has held that members of a board of directors may face individual liability under CEPA because they "constitute persons or group of persons acting directly or indirectly on behalf of or in the interest of an employer with the employer's consent." *Dewelt v. Measurement Specialties, Inc.*, No. 02-3431, 2007 WL 542234, at *7 (D.N.J. Feb. 16, 2007) (denying defendant-board members' summary judgment motion on CEPA claim, even though there was "little proof that [some of the

board members] were aware that their acts impacted plaintiff's employment," because the defendant-board members acted on behalf of the company and with the company's consent; moreover, some of the board members held supervisory authority over plaintiff).  Thus, here, the Individual Defendants may be held individually liable under CEPA because they served as board members at all relevant times (TAC ¶¶ 3–6) and appeared to hold supervisory authority over Plaintiff (*see Dewelt*, 2007 WL 542234, at *7).

Therefore, the motion to dismiss Count Six is denied.

**g)      Count Seven:  Common Law Wrongful Discharge as to All Defendants**

Under Count Seven, Plaintiff asserts a common law discharge claim (also known as a *Pierce* claim) against all Defendants, alleging that they terminated him in retaliation for his objections to hazardous conditions at the Houston Facility. TAC ¶¶ 93–98.  However, Plaintiff waived his right to assert such a claim by bringing a CEPA claim under Count Six. *See* N.J.S.A. 34:19–8 ("[T]he institution of an action in accordance with this act [CEPA] shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, State law, rule or regulation or under the common law.").

Plaintiff does not appear to dispute that his *Pierce* claim is duplicative of his CEPA claim and directly related to his termination due to the disclosure of wrongdoing at the Houston Facility. Opp. at 14–15.[9]  Rather, Plaintiff argues that he should not be forced to elect his remedies at the motion to dismiss stage. Id.  The New Jersey Supreme Court has, however, applied the CEPA waiver provision to bar duplicative common law claims at the motion to dismiss stage. *Young v.*

---

[9] Causes of action that fall into the CEPA waiver provision are those that "are directly related to the employee's termination due to disclosure of the employer's wrongdoing" (*Ivan v. County of Middlesex*, 595 F. Supp. 2d 425, 465 (D.N.J. 2009) (quoting *Falco v. Cmty. Med. Ctr.*, 296 N.J. Super. 298, 318 (App. Div. 1997))) or "substantially duplicative of [a plaintiff's] claim" (*Lamond v. Twp. of Nutley*, 2016 WL 4216634, at *6 (N.J. Super. Ct. App. Div. Aug. 11, 2016)).

*Schering Corp.*, 141 N.J. 16, 29 (1995).  Moreover, Plaintiff has had sufficient opportunity—through multiple rounds of repleading and with the benefit of discovery—to determine whether his *Pierce* claim is duplicative of the CEPA claim.  Therefore, he waived his right to assert a *Pierce* claim. *See Young*, 141 N.J. at 29; *Broad v. Home Depot U.S.A., Inc.*, 16 F. Supp. 3d 413, 418 (D.N.J. 2014) (allowing duplicative common law claim to proceed where plaintiff had filed only one complaint, because he did not yet have "an opportunity to conduct discovery").

Accordingly, Count Seven is dismissed.

### h)     Count Eight:  Breach of Implied Covenant of Good Faith and Fair Dealing as to ATC

Under Count Eight, Plaintiff asserts that ATC's position that he was terminated "for cause" constitutes a violation of the Employment Contract's implied covenant of good faith and fair dealing. TAC ¶¶ 99–102.   "Under New Jersey law, 'a breach of the covenant of good faith and fair dealing must not arise out of the same conduct underlying an alleged breach of contract action.'" *CRA, Inc. v. Ozitus Int'l, Inc.*, No. 16-5632, 2017 WL 2779749, at *7 (D.N.J. June 27, 2017) (citing *TBI Unlimited, LLC v. Clear Cut Lawn Decisions, LLC*, No. 12-3355, 2013 WL 6048720, at *3 (D.N.J. Nov. 14, 2013)).  If the factual allegations supporting an implied covenant of good faith are the same as those supporting a breach of contract claim, the former claim will be dismissed as duplicative under Rule 12(b)(6). *CRA, Inc.*, 2017 WL 2779749, at *7; *Oravsky v. Encompass Ins. Co.*, 804 F. Supp. 2d 228, 239 (D.N.J. 2011).  Here, the factual predicate for the breach of the implied covenant of good faith claim is identical to that of the breach of contract claim:  by labeling Plaintiff's termination as being "for cause," ATC allegedly denied Plaintiff benefits due under the Employment Contract. *See* TAC ¶¶ 46–53, 99–102.  Therefore, the Court will grant ATC's motion to dismiss Count Eight as being duplicative of Count One. *See CRA, Inc.*, 2017 WL 2779749, at *7; *Oravsky*, 804 F. Supp. 2d at 239.

i)      **Count Nine:  Declaratory Judgment as to ATC**

Under Count Nine, Plaintiff seeks a declaration from the Court that:  (1) the restrictive non-compete covenants in Article Six of the Employment Contract are null and void; and (2) Plaintiff is entitled to payments stated in Article Seven and Article Eight of the Employment Contract, which provide for additional bonuses in the case of a "without cause" termination. TAC ¶¶ 103–08; *see* ECF No. 108-2 at 35–36.  "The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, . . . provides that a court 'may declare the rights . . . of any interested party,' and contemplates that district courts will exercise discretion in determining whether to entertain such actions." *State Auto Ins. Companies v. Summy,* 234 F.3d 131, 133 (3d Cir. 2000) (internal citations omitted).  The Act has been characterized as "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.,* 515 U.S. 277, 287 (1995) (internal quotations and citation omitted).

Plaintiff's first request, a declaration voiding the covenants in Article Six of the Employment Contract, is moot.  The restrictive covenants he challenges are effective up to three years after Plaintiff's termination. TAC ¶ 104; ECF No. 108-2 at 31–32.  Thus, they expired on February 1, 2020, three years after Keaton's termination on February 1, 2017. *See* TAC ¶ 21.

Plaintiff's second request is redundant.  Like the breach of contract claim under Count One, Plaintiff's second request also seeks the award of bonuses due under a "without cause" termination and contests ATC's classification of his separation as being "for cause." *Compare* TAC ¶¶ 46–53 *with* id. ¶¶ 103–08.  Dismissal of the declaratory judgment claim will not prejudice Plaintiff because adjudication of Count One will resolve the same issue.

Accordingly, the Court declines to grant declaratory relief here and dismisses Count Nine. *See AV Design Servs., LLC. v. Durant*, No. 19-8688, 2021 WL 1186842, at *13 (D.N.J. Mar. 30, 2021) (dismissing declaratory judgment claim because it was duplicative of the plaintiff's breach

of contract claim); *Butta v. GEICO Cas. Co.*, 400 F. Supp. 3d 225, 233 (E.D. Pa. 2019) (collecting cases where courts declined declaratory relief because it was duplicative of other claims).

      **j)**      **Count Ten:  Civil Conspiracy as to the Individual Defendants**

Under Count Ten, Plaintiff alleges that the Individual Defendants "engaged in a civil conspiracy to unlawfully and improperly deprive [Plaintiff] of payments justly due him under his Employment Contract." TAC ¶ 111.   "There are four elements to the tort of civil conspiracy: (1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages." *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 (3d Cir. 2003) (citation omitted).   Courts also require that the defendant commit "[s]ome act that is itself a tort . . . in pursuance of the [conspiratorial] agreement" to assert a viable civil conspiracy claim. *Morganroth*, 331 F.3d at 414 (citing *James v. Evans*, 149 F. 136, 140 (3d Cir. 1906)).

The Individual Defendants do not appear to dispute that the first, second, and fourth elements are satisfied, but rather, they focus their challenge on the third element. Mot. at 28–30. However, Plaintiff sufficiently alleges that the Individual Defendants "agreed among themselves" to a purpose, that is, to "unlawfully and improperly" interfere with Plaintiff's rights under the Employment Contract. *See* TAC ¶¶ 110–12.

The Individual Defendants also contend that Plaintiff has failed to plead a predicate tort claim and that they are immune from suit because they acted within the scope of their employment. Id.   The Court finds that Plaintiff adequately pleads that the Individual Defendants committed a tort in furtherance of the conspiracy, as he asserts a viable tortious interference with contractual rights claim under Count Five. *See supra* Section III(e); *Morganroth*, 331 F.3d at 414 (allowing civil conspiracy claim to proceed where the plaintiff alleged common law torts sounding in fraud

and an overt act committed by one or more of the conspirators in furtherance of the conspiracy); *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 405–07 (3d Cir. 2000) (setting aside jury verdict on civil conspiracy claim because jury had also rejected the predicate tortious interference of contract claim, but suggesting that a viable tortious interference claim may serve as the predicate for a conspiracy claim at the pleading stage); *Alpart v. Gen. Land Partners, Inc.*, 574 F. Supp. 2d 491, 506 (E.D. Pa. 2008) (finding that a tortious interference with contract claim may serve as the predicate for a civil conspiracy claim).[10]

Lastly, the Individual Defendants are subject to suit for civil conspiracy because the Third Amended Complaint alleges that they did not act in their corporate capacity, but rather acted for their own personal gain. *See supra* Section III(e).  Therefore, Plaintiff has stated a claim for civil conspiracy and the motion to dismiss Count Ten is denied.

**k)   Attorneys' Fees**

Defendants request that this Court use its inherent authority to award attorneys' fees and costs, arguing that "Plaintiff's repetitive amendments to his pleadings [] have caused delay and unnecessary motion practice." Mot. at 30.   "District courts have 'inherent power' to award attorneys' fees in certain situations, including "when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons. . . .' *Garza v. Citigroup Inc.*, 881 F.3d 277, 284 (3d Cir. 2018) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257 (1975)). In support of their request, Defendants cite (Mot. at 30) *Ruschel v. Nestle Holdings, Inc.*, wherein the court awarded attorneys' fees to the defendant because the record "amply support[ed] the district court's conclusion that [the plaintiff] engaged in a continuous course of conduct [in both

---

[10] Note that, although *Boyanowski* and *Alpart* analyze Pennsylvania common law, both cases are applicable here because Pennsylvania similarly requires a viable underlying tort to assert a civil conspiracy cause of action. *See Boyanowski*, 215 F.3d at 405; *Alpart*, 574 F. Supp. 2d at 506.

state and federal court] to avoid confronting the merits of his action." 89 F. App'x 518, 521 (6th

Cir. 2004) (internal quotations omitted).  Here, the Court finds insufficient evidence that Plaintiff

acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *See id.*  Accordingly, the Court,

in its discretion, declines to award attorneys' fees or costs to Defendants.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 108) the Third

Amended Complaint (ECF No. 107) is granted in part and denied in part.  Counts Three, Seven,

Eight and Nine are dismissed with prejudice.[11]  Counts One, Two, Four, Five, Six, and Ten may

proceed.  Additionally, Defendants' request for attorneys' fees and costs (ECF No. 108) is denied.

An appropriate Order follows this Opinion.

**Date:** August 31st, 2021

_____

**HON. CLAIRE C. CECCHI, U.S.D.J.**

---

[11] Plaintiff's claims are dismissed with prejudice given the multiple opportunities to amend, Plaintiff's repeated failure to cure the deficiencies of Counts Three, and the futility of amending Counts Seven, Eight, and Nine. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (claims may be properly dismissed with prejudice for reasons "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment . . . The grant or denial of an opportunity to amend is within the discretion of the District Court."); *Parson v. Home Depot USA, Inc.*, No. 13-4817, 2013 WL 6587316, at *4 (D.N.J. Dec. 13, 2013) (denying plaintiff leave to amend breach of the covenant of good faith claim because it was duplicative).